FILED

04/14/2025

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
February 25, 2025 Session

## JAMES ANTHONY ANDREWS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 125616   Steven Wayne Sword, Judge**

_____

**No. E2024-00379-CCA-R3-PC**

_____

James Anthony Andrews, Petitioner, pleaded guilty in this case to two counts of aggravated assault. At the same hearing, Petitioner pleaded guilty to additional charges in another case. As part of his plea agreement, Petitioner agreed to concurrent eight-year sentences for the aggravated assault charges to run consecutively to a two-year sentence for the charges in the other case—for a total effective sentence of ten years—with the manner of service to be determined by the trial court. The trial court accepted Petitioner's guilty pleas, and Petitioner applied for probation, which the State opposed. The trial court denied Petitioner's request for probation, requiring him to serve his ten-year sentence in incarceration. Petitioner subsequently petitioned for post-conviction relief, asserting that his trial counsel was ineffective for failing to adequately investigate the case and that his guilty pleas were not knowingly and voluntarily made. After a hearing, the post-conviction court denied Petitioner's amended petition. After review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which TIMOTHY L. EASTER, J., and W. MARK WARD, SP. J., joined.

Daniel Lee Bell, Knoxville, Tennessee, for the appellant, James Anthony Andrews.

Jonathan Skrmetti, Attorney General and Reporter; Johnny Cerisano, Assistant Attorney General; Charme Allen, District Attorney General; and Jeannine D. Guzolek, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## I. Factual and Procedural History

This case stems from an incident at a Family Dollar store, during which Petitioner and his codefendant attempted to make a return without a receipt.[1] At some point, the encounter became combative and resulted in Petitioner and his codefendant being criminally charged for assaulting a store employee. For Petitioner's part, he admitted that he had a knife out during the altercation, but he argued that he was just twirling the knife around – not using it to threaten the cashier.

On May 24, 2022, pursuant to a plea agreement with the State, Petitioner pleaded guilty to two counts of aggravated assault as a Range II multiple offender. At the same hearing, Petitioner pleaded guilty in a different case to additional charges. As a result, the trial court sentenced Petitioner to eight years for each aggravated assault conviction to be served concurrently to each other but consecutively to a two-year-sentence for convictions in another matter. As part of his plea agreement, Petitioner executed a written waiver of his right to trial by jury that articulated the terms of Petitioner's plea agreement, including that he would be "applying for probation." Petitioner twice told the court at his plea hearing that he understood that it would be the court's decision as to whether he would be granted probation or serve his ten-year sentence in jail. The court instructed Petitioner that he could appeal the court's decision whether to grant probation if he was unhappy with the result. Petitioner further stated that he had no questions and that he was satisfied with his trial counsel. At a later sentencing hearing, the State opposed Petitioner's application for probation and the court determined that Petitioner was not a good candidate for probation and ordered him to serve his ten-year sentence in incarceration. Petitioner did not appeal the trial court's sentencing decision.

Petitioner subsequently filed a petition for post-conviction relief, and after being appointed counsel, filed an amended petition for post-conviction relief. Therein, Petitioner alleged ineffective assistance of trial counsel. He asserted that trial counsel failed to adequately investigate his case and failed to properly explain his plea agreement and that his guilty pleas were not entered knowingly and voluntarily as a result. The State responded that Petitioner was not entitled to relief, and the matter was set for a hearing before the post-conviction court.

---

[1] The underlying facts of this case presented to this court are limited to those from the post-conviction court's written order due to Petitioner's failure to include the indictments, judgment forms, or transcripts of the guilty plea hearing and sentencing hearing in the appellate record.

The post-conviction hearing took place on January 30, 2024. Petitioner maintained the same primary allegations from his petition—that he received ineffective assistance of counsel and that his guilty pleas were not knowing and voluntary. Petitioner's trial counsel ("Counsel") was called as a witness. Counsel testified that he had been a criminal defense attorney for approximately thirty years. Counsel spent twelve of those years at the public defender's office handling "everything from . . . misdemeanors to murder cases." He represented clients in preliminary hearings, settlement negotiations, trial preparation, and through jury trials. Counsel eventually went into private practice where he continued to concentrate on criminal law.

Counsel represented Petitioner in the underlying criminal case in 2022, as well as on several other occasions. He recalled that the case involved charges against Petitioner that were the result of an incident at a Family Dollar store. Counsel represented Petitioner at a preliminary hearing for the above-referenced aggravated assault charges. Petitioner's case was bound over to the Knox County Grand Jury, and Petitioner was released on bond. However, while the aggravated assault case was pending, Petitioner was charged with new offenses, and the State filed a motion to revoke Petitioner's bond. Counsel's recollection was that Petitioner then became anxious to settle with the State before his bond revocation hearing. In May 2022—while the instant case was pending before the Grand Jury—the State made a plea offer by email to Counsel, which stated: "[Petitioner] is on the docket Friday, May 20th, for bond revocation hearing. I would extend an offer of eight years to serve in TDOC or ten and apply." According to Counsel, he met with Petitioner after receiving the email to discuss the terms of the offer. Counsel described his normal practice regarding plea offers and stated that he would have done so:

> [e]specially in this case, where it was an either/or plea. As you notice by email, it was either take eight to serve or take ten and apply. So I would have met with him to discuss what was liable . . . to happen, but, of course, with no guarantees as to what could happen.

Further, Counsel acknowledged that the time span during which the offer was open was only from May 17 until May 20, 2022 (the day of Petitioner's bond revocation hearing), which meant Counsel had received little discovery from the State in the case.

Counsel testified that he was unsure of whether the State would oppose Petitioner's application for probation, but he stated that he would have discussed that with Petitioner. Counsel testified, "I don't remember it blow by blow. But I know what my - - my policy and how I usually operate on this is, is telling them, well, you know, if they're not agreeing to probation the State can oppose it."

When questioned about Petitioner's allegation that Counsel failed to adequately investigate the case because he did not attempt to locate a videotape of the incident from the Family Dollar store, Counsel recalled the issue of a videotape being raised and stated that he asked the State whether the tape existed and was told it did not. He did not personally attempt to contact the store for a videotape.

Petitioner then testified on his own behalf. He acknowledged that he had been represented by Counsel in the past, and for this case Counsel was appointed to represent him when he was charged with aggravated assault regarding an issue at the Family Dollar store in early 2022. Petitioner testified that when he met with Counsel, he "brought up a videotape; the fact that the State's victim wasn't the victim," but was a "witness to the crime; the fact that she said she wasn't in fear for her life when she came to court." The alleged videotape of the incident was not made an exhibit to the post-conviction hearing, and neither party offered proof that such a videotape ever existed. On cross-examination, Petitioner agreed that he was never promised anything beyond what was specifically set forth in his plea agreement, but he claimed that he did not understand that the State would oppose his application for probation.

According to Petitioner, Counsel informed him that there was an offer. Petitioner said Counsel's "exact words" were the prosecutor had done Petitioner "a favor, because [the prosecutor] capped it off at ten years and was going to let me apply for probation." Petitioner said that he understood that he still had to apply to the trial court for probation, but he just "didn't think anybody was going to oppose it." Petitioner testified that if he had known the State was going to oppose his application for probation, he "might have signed off" on the eight-year offer. He also agreed that he had a knife with him before entering the store and was swinging it around, but he denied he threatened anyone with it. Petitioner acknowledged he had pleaded guilty to felony charges in previous cases.

Ultimately, Petitioner asserted that the condensed time frame between being charged with the crime and accepting the State's plea offer did not permit Counsel to appropriately investigate the case, which denied Petitioner the ability to properly evaluate the evidence against him before entering his pleas. Petitioner testified that Counsel never disclosed the eight-year alternative plea offer to him.

At the close of the hearing, the post-conviction court took judicial notice of the plea colloquy and took the matter under advisement. On February 5, 2024, the post-conviction court filed its "Findings of Facts and Conclusions of Law Regarding Amended Petition for Post-Conviction Relief." Therein, the post-conviction court specifically stated:

> [Petitioner] testified that [Counsel] presented him with one option as a plea agreement: ten years and apply. He said he was not presented with an offer of eight years to serve. [Petitioner] testified that he agreed to ten years and apply; however, he stated that he would not have accepted this offer had he known that the State would oppose his application. The court does not find this testimony credible. In any event, he never testified that [Counsel] told him the State would not oppose probation. The court made it abundantly clear that the decision on whether or not he would receive probation was completely up to the court. [Petitioner] admitted during cross-examination that he had pled guilty in the past to other criminal offenses. This was not his first experience with the plea process. The proof against him in the aggravated assault charges, as reviewed by the State during cross-examination, was strong.
>
> [Petitioner] also testified at the post-conviction hearing that there should be a video of the alleged assault that would contradict the testimony of the witness at the preliminary hearing. He complains that [Counsel] never obtained this video. No video was presented to the court during the post-conviction hearing.

The court ultimately concluded that Petitioner had "failed to establish that [Counsel] was deficient in his performance or that [Petitioner] was prejudiced by any perceived deficiency." The court further found that the plea agreement had been "clearly explained" to Petitioner and that Petitioner's "plea was knowingly, understandingly, and voluntarily entered." Thus, the court denied Petitioner's petition for relief. This appeal followed.[2]

## II. Analysis

### A. Post-Conviction Standard of Review

To obtain post-conviction relief, a petitioner must establish his or her "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. A petitioner bears the burden of proving the factual allegations contained in the petition by clear and convincing evidence. *Id*. § 40-30-110(f); *see Dellinger v. State*, 279 S.W.3d 282, 296 (Tenn. 2009). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the

---

[2] Petitioner's notice of appeal was untimely filed. However, upon Petitioner's motion, this court accepted Petitioner's late-filed notice of appeal.

evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

Appellate courts do not reassess the post-conviction court's determination of the credibility of witnesses. *Dellinger*, 279 S.W.3d at 292 (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Assessing the credibility of witnesses is a matter entrusted to the post-conviction judge as the trier of fact. *R.D.S.*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). On appeal, a post-conviction court's factual findings will not be disturbed unless the evidence contained in the record preponderates against the findings. *Brooks v. State*, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988); *Clenny v. State*, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978). On the other hand, conclusions of law are given no presumption of correctness on appeal. *Dellinger*, 279 S.W.3d at 293; *Fields v. State*, 40 S.W.3d 450, 457-58 (Tenn. 2001). We review "a post-conviction court's conclusions of law, decisions involving mixed questions of law and fact, and its application of law to its factual findings de novo without a presumption of correctness." *Whitehead v. State*, 402 S.W.3d 615, 621 (Tenn. 2013) (first citing *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011); and then citing *Calvert v. State*, 342 S.W.3d 477, 485 (Tenn. 2011)).

On appeal, Petitioner asserts that the trial court erred in denying his petition for post-conviction relief because (1) his "rights were infringed due to ineffective assistance of counsel," and (2) he "entered a plea without knowingly and voluntarily surrendering his rights due to ineffective assistance of counsel." The State asserts the post-conviction court properly determined that Petitioner failed to show that Counsel acted deficiently or that he was prejudiced by any such actions. Also, the State contends that Petitioner has waived his claim that his plea was not knowingly and voluntarily entered because Petitioner did not include the transcript of the guilty plea hearing in the appellate record.

## B. Ineffective Assistance of Counsel

Both the United States Constitution and the Constitution of the State of Tennessee guarantee criminal defendants the right to effective assistance of counsel. U.S. Const. amend VI; Tenn. Const. art. I, § 9. Under the Sixth Amendment to the United States Constitution, when a petitioner raises an ineffective assistance of counsel claim, the burden is on the petitioner to show both (1) counsel's performance was deficient and (2) the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The *Strickland* standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. *State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989). To prevail on such a claim, a petitioner must prove both prongs of the *Strickland* test, and failure to prove either is "a sufficient

basis to deny relief on the claim." *See Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). "[A] court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

To prove that counsel's performance was deficient, a petitioner must establish that his attorney's conduct fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. As our supreme court has held:

> [T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence . . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.

*Finch v. State*, 226 S.W.3d 307, 315-16 (Tenn. 2007) (quoting *Baxter v. Rose*, 523 S.W.2d 930, 934-35 (Tenn. 1975)). A reviewing "court may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation." *Alley v. State*, 958 S.W.2d 138, 149 (Tenn. Crim. App. 1997) (citing *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982)). A reviewing court also cannot criticize a sound, but unsuccessful, tactical decision made during the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994).

To prove prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. With regard to guilty pleas, the prejudice prong requires the defendant to show that the outcome of the plea process would have been different absent the deficient performance. *Lafler v. Cooper*, 566 U.S. 156, 163 (2012). More specifically, the test is whether there is a reasonable probability that, but for counsel's errors, the petitioner would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Further, to show prejudice from an alleged lack of a proper investigation, the petitioner must show at the post-conviction evidentiary hearing what a proper investigation would have revealed. *See Olive v. State*, No. M2023-00719-CCA-R3-PC, 2024 WL 2797015, at *8 (Tenn. Crim. App. May 31, 2024) (providing that absent such a showing the court can only speculate as to whether it would have made a difference), *perm. app. denied* (Tenn. Oct. 29, 2024). Thus, when a petitioner

chooses to plead guilty and then claims the guilty plea was the result of an inadequate investigation, the petitioner must show (1) what a proper investigation would have revealed and (2) that this information was significant enough that there is a reasonable probability that the petitioner would not have plead guilty.

We agree with the post-conviction court that Petitioner failed to establish that Counsel's performance was deficient or that Petitioner was prejudiced as a result. Counsel testified that his normal practice was to present all plea offers to his clients and that he would have done so in this case. The post-conviction court found Petitioner's contrary testimony that he was never presented with the eight-year offer not credible. Further, as to Petitioner's claim that Counsel failed to adequately investigate Petitioner's case, we agree with the post-conviction court that Petitioner did not meet his burden of proof as to prejudice. Petitioner's bare assertion that Counsel did not obtain a videotape of the incident, which the post-conviction court found Petitioner "failed to show that such video ever existed" and did not offer as an exhibit at the post-conviction hearing, leads us to conclude that Petitioner has failed to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. As a result, Petitioner is not entitled to relief on this issue.

## C. Voluntariness of Guilty Plea

Petitioner further asserts that he entered involuntary and unknowing guilty pleas as a result of Counsel's ineffective representation. The State argues Petitioner waived this challenge because he failed to include the transcript from the plea hearing, which the post-conviction court relied on in making its decision. Alternatively, the State argues that Petitioner's guilty pleas were voluntary and knowing.

We must first determine the impact of Petitioner's failure to provide an adequate record. It is a petitioner's duty to provide a "record which conveys a fair, accurate[,] and complete account of what transpired with respect to the issues which form the basis of the appeal." *State v. Taylor*, 992 S.W.2d 941, 944 (Tenn. 1999) (citing Tenn. R. App. 24(b)). "[I]n the absence of an adequate record, this court must presume the trial court's ruling was correct." *State v. Worthington*, No. W2018-01040-CCA-R3-CD, 2019 WL 2067926, at *6 (Tenn. Crim. App. May 8, 2019) (citing *State v. Richardson*, 875 S.W.2d 671, 674 (Tenn. Crim. App. 1993)).

The State argues this court cannot fairly review the post-conviction court's order without reviewing the plea hearing transcript that the court relied on in making its decision. From our review of the limited record, it does not appear that the plea transcript was made an exhibit at the post-conviction hearing, and it has not been provided to this court.

Petitioner also failed to include the indictments, judgment forms, or the transcript from his sentencing hearing in the appellate record. We note that the post-conviction court found Petitioner's plea was voluntary, and based this decision, in part, on what transpired at the guilty plea hearing. As the State correctly notes in its brief, without a complete record, we are unable to further review Petitioner's challenges. *See* Tenn. R. App. 24(b); *Taylor*, 992 S.W.2d at 944. Accordingly, because Petitioner failed to provide an adequate record, we must presume the post-conviction court was correct, and Petitioner is not entitled to relief. *See Worthington*, 2019 WL 2067926, at *6.

### III. Conclusion

After review, we affirm the judgment of the post-conviction court.


                                            s/ Matthew J. Wilson
                           MATTHEW J. WILSON, JUDGE